**In re the MARRIAGE OF Marilyn L. KUNZMAN and William O. Kunzman.**

**Upon the petition of Marilyn L. KUNZMAN, Appellee, and concerning William O. KUNZMAN, Appellant.**

No. 2–57997.

Supreme Court of Iowa.

March 17, 1976.

Harris & Pettit, Bloomfield, for appellant.

Vern M. Ball, Bloomfield, for appellee.

Heard by REYNOLDSON, Acting C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and McCORMICK, JJ.

UHLENHOPP, Justice.

This de novo appeal involves the propriety of terms of a decree dissolving the marriage of William O. and Marilyn L. Kunzman.

The parties were married in 1955 when William was 26 and Marilyn was 22. Three children were born to them, of whom two are now adults. At the beginning of the marriage, William had assets of about $18,000. Marilyn's financial assets were negligible at that time, but she received a small inheritance from her mother during the marriage. William had farming experience and Marilyn had worked a year as a beautician. William is the only child of elderly parents who own a nearby farm of 240 acres. William's prospects for inheritance thus appear to be good, while Marilyn's prospects for further inheritance are nil.

William farmed during the marriage, while Marilyn engaged in child rearing,

housekeeping, and gardening. She also raised chickens and on occasion helped with field work. The parties acquired a farm of 120 acres in joint tenancy as well as live-stock and machinery. William operates that farm as well as his parents' land. His evidence indicates the parties' net worth to be about $54,359. From all the evidence, however, we think this figure, like the net income figure William shows, is very conservative. Certainly he has earning capacity for the future.

William enjoys good health, but Marilyn had a thyroid problem, a hysterectomy caused by a malignancy, and a malignancy in her neck. She is not strong. At time of trial she was taking medicine which cost $185 per month, mostly covered by medical insurance.

The trial court dissolved the marriage, conferred on Marilyn the custody of the minor children (now only one such child), awarded her child support of $20 per week for each minor child, continued the joint tenancy of the farm, gave Marilyn the sole right to occupy the home on the farm so long as she remains unmarried and occupies it as a residence for herself or children, granted her alimony of $155 per week so long as both parties live and Marilyn remains unmarried, and decreed other terms.

William appealed, objecting to the economic terms of the decree.

I. The criteria in cases of this kind are set out in *Schantz v. Schantz*, 163 N.W.2d 398 (Iowa), and *In re Marriage of Williams*, 199 N.W.2d 339 (Iowa). Applying those criteria to the present case, we think the term of the decree allowing Marilyn to occupy the home is clearly equitable. She must have a home, she owns half of the farm, William has a trailer on the farm where he can live when not with his parents, and the home for Marilyn on the farm reduces the financial burden of both parties.

II. William objects that the alimony terms of the decree are not fair. He asserts that in the past Marilyn washed, ironed, cleaned, cooked, sewed, and helped in the field, and she ought to be able to work now. He cannot seem to accept the fact that the most vigorous years of Marilyn's life are apparently past. While William, fortunately, remains robust, Marilyn has become frail and beset with maladies.

The alimony of $155 weekly, however, is larger than we would expect for periodic payments under the circumstances here. The trial court evidently desired to enable William to hold the farming operation together and therefore imposed substantial periodic alimony rather than a lump sum obligation. We agree that holding the farming operation together is desirable, but we doubt that William can successfully carry the load of periodic alimony placed upon him. We think that he should be required to pay less periodic alimony but should be required to pay some lump amount later, and that the terms of the trial court's decree should be changed accordingly.

We therefore leave standing the terms of the trial court's decree as to dissolution of the marriage, custody of children, child support, and costs and attorney fees in the trial court. But we return the case to district court for entry, in lieu of the other terms of the trial court's original decree, of a supplemental decree in the district court's own language, to be in substance as follows effective from the date of the filing of this opinion:

1. Ownership of the parties' farm described as the Northwest Quarter of the Northwest Quarter and the East Half of the Northwest Quarter of Section 36, Township 70 North, Range 12 West of the 5th P.M. shall remain in joint tenancy ownership by the parties, with right of survivorship; and so long as both parties live, neither party shall have power to alien or encumber his or her undivided interest in such real estate or to sever the joint tenancy, except with the written concurrence of the other party.

2. During the joint tenancy of such real estate, Marilyn shall have sole possession rent-free of the home located thereon, so long as she remains unmarried and occupies the home as a residence for herself or for herself and any of the parties' children. The "home" shall include the appurtenant yard and garden and unobstructed access to the house via the driveway.

3. Further during the joint tenancy of such real estate, William shall have sole possession rent-free of the whole thereof except the home; but if Marilyn's right of possession of the home shall terminate under the preceding paragraph, William shall thereafter also have sole possession rent-free of the home.

4. Likewise during the joint tenancy of such real estate, William shall pay the taxes thereon, including the taxes on the home, and also the insurance premiums on and expense of repairs to the improvements on such real estate, including the home.

5. As between William and Marilyn, William shall be responsible for payment when due of all financial obligations of the parties or either of them existing as of the time the trial court's decree was filed, whether such obligations are secured or unsecured.

6. Marilyn is awarded the household goods, the personal effects of herself and the parties' minor child, and the contents of the home (other than William's personal effects), as well as the parties' passenger car. William is granted all other personal property of the parties.

7. Marilyn is granted $20,000 of William as alimony, to be paid by him no later than ten years from the date this opinion is filed. If not fully paid by the expiration of such ten years, the unpaid amount shall bear interest from the expiration of such ten years until paid at 7% per annum. From the time of the filing of this opinion, William's undivided interest in such real estate is impressed with a lien in Marilyn's favor to secure payment of such judgment for $20,000 and interest. If not fully paid by the expiration of such ten years, the judgment may be enforced by execution, by contempt, and by foreclosure of the lien. Such judgment shall survive the death of William, Marilyn, or both of them.

8. William shall pay Marilyn as additional alimony, through the clerk of district court, the sum of $300 on the first business day of each calendar month after this opinion is filed, so long as William and Marilyn both live and Marilyn remains unmarried.

Appeal costs, including $2,000 to be applied on Marilyn's attorney fee in connection with this appeal, are taxed to William, but the clerk is directed to limit costs to $2 per page for printing expenses for the appendix and the parties' briefs and arguments.

MODIFIED, AFFIRMED, AND RE-MANDED.

All Justices concur except RAWLINGS, J., who dissents.